Case number 18-1334, Andrew Wallace v. Edward W Sparrow Hospital Association, argument not to exceed 15 minutes per side. Mr. Colin Nyholt, you may proceed for the appellant. Thank you very much. May it please the court, Colin Nyholt on behalf of the appellant, Andrew Wallace. I'd like to reserve five minutes for rebuttal if I may have your permission to do so. You may. Thank you very much. Your Honor, at the bottom of this case, this is a disability discrimination case with an FMLA twist. Andrew Wallace was a seven-year security guard at Sparrow Hospital. He had a resurgence of PTSD and they set out to terminate him. After he made complaints that he was being treated badly because of his PTSD and targeted, they ramped up their efforts and they ended up terminating him supposedly under their leave policy. In so doing, they ended up violating the FMLA. Basically, the facts of the case, April 10th is the date that Wallace started to have real problems with his PTSD. His daughter had made a false allegation against him for sexual assault. He self-reported to the police, you know, I can't be a security guard if I've got this kind of an allegation against me. So he self-reported to the police, underwent polygraphs, went through a whole rigmarole and he was cleared of it. It turned out to be she had her own mental issues and that was kind of what fed into her making these allegations. But, you know, it triggered in him memories from his time of service. He kind of compartmentalized them and it caused it all to come crashing back. So he started having mental disturbances, nightmares, you know, sleep problems. The day after she made her allegations, he calls up Lee Ann Jacobs, Sparrows. They call her a total rewards representative, but really she's the one that kind of administers their FMLA and their medical leaves. And he tells her, look, you know, I'm having mental issues. I have to talk to my psychologist and I'm probably going to have to take some leave. She tells him, that's fine, you know, you've got some leave left. Despite this fact, and he has a similar conversation with his manager, Todd Cassidy, around this point in time. Well, April 18th, he gets a level 1 for attendance, even though this is the midst of his leave. April 19th, he gets a level 2. April 21st, there's a level 3. Even though he's in the midst of this leave. Right. When did he speak with them? April 11th. But they require certain information before it's a legit leave, right? But by the statute, they have an obligation to investigate once he's given the notice of the leave. Right. And I think, you know, at very least that gets us to a question of fact as to whether there's an interference just by them writing these occurrences. And what really, really irks me about this is that we have the termination document. They list these occurrences. Sparrow has tried to claim that they forgave him for these, but they made their way into the termination document. They're listed and recited on the termination document that he received. I think that at very least that gets us to a question of fact as to whether FMLA retaliation has happened here. Because, you know, I think a post-litigation re-justification, such as we've had from Sparrow, doesn't... Are you saying that there's no contemporaneous record of him being told, just ignore those days, that once they got that letter at the end of the month that they told him, we're vacating these? That was... The trouble is, Kurt Bettine relied on them to get him to termination later. These absences were listed as levels he had received on the termination document. But there's also testimony... They didn't rely on them to count the nine days. I mean, all of it adds up without these, and there's evidence that they... There's testimony against one of the dates. It's 12 days, Your Honor. I respectfully correct. One of the dates they're relying on is January 22nd. They didn't rely on that at the time. They came up with that in litigation. Basically, what happened is, I think what happened is at the time, Kurt Bettine said, well, he had this level back in April, which turned out to be in the middle of his FMLA leave, which is a violation, so we can technically terminate him. And by the way, you can't look at the termination event in a vacuum. As this is going on, not five days before, he went to Julie Donovan and said, look, I feel like you guys are targeting me because of my PTSD. I want it to stop, and I want an accommodation. The next day, we have an email between Julie Donovan and one of the parking managers, and she says, Andrew Wallace just requested accommodations, and the manager writes back and says, well, we have a problem here because something to the effect of can't we get in trouble because he's made a request for accommodation? We should discuss because security officers expressed concerns about him before his first leave. And then they terminate him under this. Kurt Bettine comes up and says, technically, we can fire him because of his absences on the 20th, 21st, the 23rd, and the 24th, omitting the 22nd. So in litigation, we get into this, and I think Sparrow realized, oh, well, to get to those 12, he had to rely on this April 19th, but he also wasn't there on the 22nd, so if we count that one, even though Kurt Bettine didn't count it at the time, that gets us to our 12. I look at that, Your Honor, as a... Just to make sure I'm understanding what you're saying and I understand the case, don't you, on your side of the case, you have a problem, as I understand it, if, in fact, he got all the leave and used it all up and then was only fired after more absences. Am I right about that? Correct. Okay, so I come to argument thinking they have documented, they've made mistakes, but they have documented that he got all the leave to which he was entitled. And it doesn't help, the answer to that problem I'm identifying, it doesn't help me to say, oh, there were people that were concerned about his PTSD or evidence that suggested that. I mean, if he got all the time, he got all the time. So tell me the thing that shows there's a mistake about that. Well, the only time he was fired when he couldn't be fired. The only time they've identified this January 22nd as an occurrence was after litigation was filed. Okay, I mean, that's the mistake point. You're allowed to make mistakes, and then they come forward with their explanation for the mistake and then you're allowed to say they've miscounted and they couldn't fire him at this point because he hadn't used all his leave. Well, no, what I'm saying at that point, well, what I'm saying at that point is you can't look at that in a vacuum. You also have to look at it with the fact that he is made... I guess I am looking at it in a vacuum. Got all his leave. If he got it all, then I'm struggling... But at the time, Curt Bettine looked... Well, number one, he has testimony that he was not scheduled on January 22nd and it was an error that they counted that against him to begin with. He testified that he was on a three-on-two-off schedule and therefore he wouldn't have had a block of four absences in a row. That's a big question of fact for this thing. And number two, it's very evident because the only documentation they have that the January 22nd date was counted happened after litigation. I look at that as a post-litigation rationalization, which brings it in line with McKinnon v. Nashville Banner Publishing Company, where if you identify an unlawful termination that's unlawful at the time, where if you identify an unlawful termination that's unlawful at the time, and then the employer comes forward with a post-litigation rationalization that would have justified the termination,  It just says that it limits your damages. And that case I gave you, it's a United States Supreme Court case from 1995, 513 U.S. 352. The important detail of that is, what it says is, the employer has an interest in not having reinstatement against people that it finds during litigation they had a separate independent reason to terminate, but it also gets into their head at the time and says, if at the time their thinking violated the statutes, you have a claim against them. So McKinnon kind of split the baby on that one and said, we're not going to let a plaintiff who was terminated under wrongful reasons, who could have been terminated for a rightful reason, we're not going to let them have prospective damages, we're not going to let them have reinstatement, we're going to cap their damages to the date that the employer figures out that they had this alternate reason, and your claim for damages for that period of time. And I really think that that applies here, because it wasn't until halfway through the litigation that Sparrow even thought to count January 22nd as occurrence. They didn't count it at the time. They had that email between them that showed he was absent at the time, but Curt Patin didn't think to count that as one of the dates. He said it was 21st, 22nd, 24th, and 25th, which implies that he was looking at one of the FMLA leave dates to get him to that level. And that's our contention, is that he, at the time, was in violation of the FMLA. He's looking for this technical reason to terminate Wallace so they don't have to accommodate his request for leave and to get this PTSD. Which days are you relying on that should not be in the count? January 22nd. And is that the only one? There's been some talk about December 16th, but his testimony was that he called in in advance and got approval not to be there. Sparrow's argument that December 16th, now they're arguing that it should count because the court counted, even though they didn't argue it at the time. Their argument is that it should count now because it was an absent state and because he didn't call in and request a time off. He said he wasn't going to be there. I think that's a very foolish distinction. I'm referring to the pressure point training that he went under. It's this grappling class that security guards are required to undergo. He couldn't go because he couldn't get his ADHD medication and it's creating problems with impulsivity. So he calls his supervisor and says, hey, look, I can't get my meds. I'm concerned that I might hurt somebody because my ADHD medication is off and it causes me to become impulsive. I'd like to finish the point before I stop. And the supervisor says, okay, fine. They've tried to say that under those circumstances he didn't call and get the leave excused. I don't see a good distinction. I think he did call in advance for it. So to answer your question directly, I don't think that December 16th that they're now relying on that they didn't argue in their brief counted. They listed off the dates and it wasn't among the dates that they list, Your Honor. But now they're kind of trying to rewrite history yet again by saying maybe we should have counted it. Okay, but they only need a certain number of days, right? 12. So that's not included in the 12, as I understand it. Correct. So we're really talking about the January date. Yep, January 22nd. Okay, and as I understand it, what have you produced to show that that really wasn't an off day? My client's testimony that he wouldn't have had four days in a row because he was on a three-on-two-off schedule at that point in time. And also the fact that that date was not included. They listed the dates that they said got him to his levels 1 through 4 and January 22nd wasn't one of them. They listed January 20th, 21st, 23rd, and 24th. They didn't list January 22nd at the time. The only time they've claimed January 22nd is during this litigation. Okay. And then what do you say about the fact that his return date was beyond the period anyway? That's two different issues. That was when he came back to work in December. He went off, they posted his position, he had to reapply for his position. He started again on December 6th. Then this stuff with his ADHD medication happened. Then on January 6th he went into Julie Donovan's office. I understand. I'm talking about the initial period. The initial period, yes. The doctor's note was that he can return sometime in August. August 16th. Right. Do we look at the higher date? Or do we look at... This is another thing. They posted and filled his position on July 10th. Leanne Jacobs, the total reward representative, said he should have had his leave through August 10th. I think that also gets us to a question of factors. Did they interfere with his rights by posting his position a month beforehand? We can count. The court did. The court found that it would have been August 11th. There was a footnote in the decision where it came up with August 11th as the date that his initial leave should have ran to. Even though they posted and filled his position on July 10th. You're saying that the court said that his leave would have been open until August? Yes. It was the first footnote on the second page of the opinion. They gave a calculation, compared the leave that Leanne Jacobs gave to the 120 days and said it would have gone to August 11th. I didn't understand that because... If you started April 14th. Right. But what about the prior leave that he had within that year? Sparrow renews on March 19th. It's 120 days in any 365 calendar period starting on March 19th. But that applies to your absences. It doesn't apply to your leave. I... I think it's both, Your Honor. While counsel's arguing, maybe you could look at the document because at least that's the way I read it. It says you have a rolling period. I... Okay, I would defer to your read of it then. May it please the court, Scott Eldred on behalf of Sparrow Hospital. Good morning, Your Honors. This is not a case of after-acquired evidence as counsel alluded to. Sparrow's justification for discharging Mr. Wallace in 2016 was because he reached 12 unexcused absences not counting any absences protected by the FMLA. Can you keep your voice up? Yes, thank you. Sorry, a little hoarse this morning. He reached 12 unexcused absences as of January 24th, 2016 without counting any FMLA-protected leaves. They've never wavered from the reason why he was discharged. It was because he violated that attendance policy. What about the January 22nd point? Yes, and that's what I want to address next, Your Honor. Thank you. This is not a post-litigation justification. The January 22nd date appeared in the contemporaneous business records of Sparrow Hospital at the time that Mr. Bettine was examining whether he had reached 12 unexcused absences. It was in the scheduling documents that we attached to our briefing that Mr. Wallace was confronted with during his deposition. It simply is a matter of sloppy paperwork here. Sloppy paperwork, confusing paperwork is not evidence of discrimination, is not evidence of retaliation or interference or otherwise. During the deposition, we confronted Mr. Wallace about the January 22nd date specifically and whether it was a scheduled workday for him. Initially, he wasn't sure. When we pressed him, and it's in our briefing and it's in the transcript, he said it's a possibility, quote, possibility, that was his word, that it was a scheduled workday. Any doubt was then resolved by the affidavits that are unrebutted in the record by Mr. Bettine and Mr. Cassidy who looked at the contemporaneous business records and said, yes, indeed, he was scheduled to work that day in an afternoon shift and was a no-show. It was an unexcused absence. When we asked Mr. Wallace about it during his deposition, he admitted that if we count January 22nd as an unexcused absence, he hit 12 unexcused absences under the attendance policy and he was to be terminated. But that doesn't get you anywhere. That assumes the fact that it's in dispute. So, I understand. Mr. Wallace never took any depositions in this case. Not a single one. Didn't try and attempt to test the veracity of what Mr. Bettine would say or of the business records showing that he was absent and scheduled to work on the 22nd. Well, you produced business records saying that he was scheduled? That's right, Your Honor. And what was that? In our briefing as well, there are business records that were screenshots of schedules for when he was scheduled to work that Mr. Bettine was looking at on January 25th. The day before, he wrote the final discipline on January 26th terminating Mr. Wallace and those were screenshots that showed that he was scheduled to work on the 22nd and that he did not show up to work. So, what about this two-day, three-day business? I'm sorry, I'm not sure I follow. That he was scheduled. Is that what he said? And the other business records contradict that. One of the documents that we had attached to our briefing and that is part of the record is a schedule from January of 2016. And it shows that he was not scheduled on a three-on-two-off schedule and that his schedule was much more erratic than that. And it's part of the record, Your Honor, and at the moment I'm having trouble placing my fingers. It's page ID number 330 which was part of Exhibit G in the lower court proceedings. That is a schedule that his supervisor, Mr. Cassidy, has attested via affidavit was a contemporaneous schedule being kept in an accurate schedule of his time during that period. There are other months that are part of the record as well, and it does not show that there was a three-on-three, two-off day schedule. Judge Maloney noted as well. Your view is if he was a no-show on January 22nd, then it was quite permissible to fire him when you did. Because if you just add up the no-shows and the medical leave, that's the way it works. And then your second point would be to the extent he's arguing this is a post hoc rationalization, one, that's not true. The underlying documentation showed it. But I guess where the rubber meets the road is whether there's a material fact dispute about whether he was a no-show and should have been there on the 22nd. The evidence on the other side is what? The evidence on his side is his testimony, which he said it's a possibility I was scheduled to work on the 22nd. If there is any doubt, it's been since resolved by the affidavits and by the contemporaneous business records, the veracity of which he never bothered to test. What happens if we decide that the possibility line is enough to make that a material fact dispute? Do you still win? In other words, if we decide that January 22nd he wasn't a no-show or it's a material fact dispute? Yes, because at worst it's an honest mistake. And the honest belief doctrine, of course, doesn't punish an employer for making a mistake. It's certainly not an administerial mistake by having sloppy paperwork. They honestly believe that he hit 12th. What was correct on the document, the disciplinary document dated January 26th, what was absolutely correct is that no matter how we add up the unexcused days, on January 24th, 2016, he hit his 12th unexcused absence. That was absolutely correct on that document. Counting the 22nd. Counting the 22nd. That is correct. Which he cannot show except his speculation that it was a possibility that he was unscheduled that day. That's the only evidence that's in the record that rebuts the affidavits and the contemporaneous documents. He made a strategic decision during litigation not to depose anybody and test the veracity of these documents and so it is unrefuted testimony via affidavit and evidence. And there's no other questions about January 22nd. I would like to address briefly the FMLA interference component of this case. Interference can come in generally two methods under the FMLA. One, a failure to reinstate someone after they've had their 12 weeks of leave. Here, no matter how the math adds up, he exhausted his 12 weeks of leave and he was given a full 12 weeks of leave starting April 14th. If we give him the benefit of the doubt and say that he had a full 12 weeks as of April 14th, 2015, it would have expired and it did expire as he even admitted it would have expired no later than July 7th of 2015. His job was not posted and filled until July 10th of 2015. So even reading all of those facts or giving him the benefit of the doubt as to all of those dates and repopulating his full 12 weeks as of April 14th, which wasn't actually the case or the obligation of Sparrow. You said 12 weeks, but didn't your policy give him more than 12 weeks? Yes. The policy is a medical leave policy that provides 120 days of medical leave that runs concurrently with any FMLA leave. It is not a violation of the FMLA to fill his position after his 12 weeks expired if he can't return to work at the end of his 12 weeks, which was clear he couldn't. His doctor sent in a doctor's note on June 27th of 2015 saying he's going to be out until July 12th long after his FMLA period would have expired, giving him the benefit of the doubt. Then on July 7th, Dr. Emerson, his physician, submits another doctor's note saying it's going to extend until August 16th of 2015, months after his FMLA leave would have expired. So when they filled his position, he had no more FMLA leave and he made it clear through these doctor's notes which he admits during his deposition he was not capable of returning to work until August 16th of 2015. The FMLA does not protect him anymore vis-a-vis his reinstatement rights as a result. The August 16th date in 2015, as he admitted during his deposition, was at least four or five days after the 120 days expired under their policy. The fact that the policy, though, is more generous than the FMLA doesn't mean that they interfered with his FMLA rights because he was provided all leave to which he was entitled under the FMLA. The other way you can establish an FMLA interference claim is if FMLA-protected days are used against you under a no-fault attendance policy. As you see from our brief, in the 12 days of unexcused absences that we typed up in our brief identifying from the record those days that he was absent, not one of those was an FMLA-protected day. Not a single one. Twelve days meets the level four under the attendance policy that Sparrow implemented and called for his termination. The affidavits show, and again, he didn't test the veracity of any of the testimony, he didn't test the veracity of the documents during litigation, those affidavits establish and show that the decision-makers were not considering any FMLA-protected days. In fact, when we go back to his testimony when he was asked about the April 18th and 19th days where documents were generated to write him up under the attendance policy, he admitted that his supervisor told him not to sign them. And that is because those were never held against him because on April 28th of 2015 he submitted finally his FMLA paperwork and leave of absence request that under the policy Sparrow asks for and is entitled to ask for. Once they received it, without question, they retroactively granted his leave and applied it to start as of April 14th, 2015. When I say leave, I mean they retroactively granted him FMLA-protected leave. That's why you don't see in our chart of unexcused absences in our brief any date being counted to that 12-number threshold post-April 14th within 2015. Unless there are any other questions, I will rely on our briefing. And I thank your honors for your time and we ask that you affirm the lower court's decision. Thank you, counsel. I'd like to talk for a minute about what that sloppy and confusing paperwork actually says. We have the document that Sparrow relied on to terminate Wallace. What it says is that he was terminated for the last four absences on January 20th, January 21st, January 23rd, and January 24th. It does not say there was an absence on January 22nd. The fact that Sparrow has evidence that shows that Bettine was aware that he wasn't present on January 22nd tells us that probably at the time he viewed that as a non-occurrence, as an excused absence. Isn't this more of an after-the-fact mistake as opposed to an after-the-fact rationalization? I don't think so. I think at the time there's a sincere question of fact as to whether that absence should have counted against him even if he wasn't there. I'd also point out that January 22nd was the date that... What's your evidence that makes it a material fact dispute as to whether he was a no-show on January 22nd? The question is not whether he was a no-show, whether that was an absence. Remember, if it's an excusable absence, it doesn't count against him. Bettine didn't count against him at the time. What is your evidence? At the time? Yes, because they told us specifically in his termination document what dates counted against him, and January 22nd wasn't one of them. What that same document said is one of the dates they did count against him was a prior level he had for April 23rd, which was a covered absence. At this point, this is a Rule 56C motion, and we're spending all of our time talking about the facts and conflicting facts and what they show. I certainly think that dismissal at this point was improper. Is it true that his only testimony on this is that it was a possibility that he was supposed to be there? Yeah, he said it's possible, but he said he didn't think it was likely because he was on a three-on-two-off schedule. And when you couple that with the fact that at the time, when Bettine was coming up with his... Does your evidence contradict what they just said about the 3-2 schedule, that in fact he was supposed to be there? What it contradicts is that January 22nd should have counted against him, as they're now claiming. Between that and the fact that the termination document didn't say that January 22nd counted against him were created after they got sued for an FMLA violation. But some of those documents existed before then. Isn't that true? But the one that counts is the one where Bettine said these are the dates that are giving rise to termination, and he said he had a Level 1 on January 20th, a Level 2 on the 23rd, a Level 3 on the 23rd, and a Level 4 on the 24th. Had 22nd been counted against him, the Level 1 would have been on the 21st, and the Level 2 would have been on the 22nd, and the Level 3 would have been on the 23rd, and the Level 4 on the 24th. The difference that makes is to give him a Level 1 on January 20th, they have to look at dates that would have fallen under his protected leave. Because looking at their own list of dates, the only dates they could come up with included the January 22nd date. And again, I have to point out, this is a Rule 56C motion. This is a question of fact that should have been resolved by the jury. It certainly is not fodder for a directed verdict at this point. Is there anything further I can respond to? I was quite over on my principal argument. I think not.  The case will be submitted.